IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE HALL, #S13136,<br><br>          Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., ROB JEFFREYS, FRANK LAWRENCE, WARDEN WILLIS, SIDDIQUI, ANGELA CRAIN, NURSE ZIMMER, AMY LANG, JOHN DOE 1, JOHN DOE 2, INTERNAL AFFAIRS UNIT, C/O QUALLS, JOHN DOE 3, and JANE DOE 1,<br><br>          Defendants. | Case No. 20-cv-00556-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

      Plaintiff Willie Hall, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Hall claims that he has received inadequate healthcare for his diabetes and infected toe and been retaliated against by staff for filing grievances. He seeks monetary damages and injunctive relief.

      The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this

juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Hall alleges that the Illinois Department of Corrections (IDOC) is severally overcrowded. (Doc. 1, p. 4). Wexford Health Sources, Inc. ("Wexford"), the company contracted to provide healthcare to inmates within IDOC, deliberately denies inmates, including Hall, access to medical care and medical treatment for serious medical needs. (*Id.* at p. 5). Wexford understaffs the healthcare units of IDOC facilities and does not hire an adequate number of nurses, doctors, and specialists in an effort to save money. (*Id.* at pp. 5, 14). Because of the overcrowded conditions and understaffing, sick call and doctor appointments are cancelled. Too many inmates are scheduled to be seen, and the nurses and doctors become overwhelmed by the number of inmates they see on a daily and weekly basis. (*Id.* at p. 15). IDOC Director Rob Jeffreys and IDOC Medical Director John Doe #1 know about the inadequate medical care being provided to the inmate population but refuse to address or fix the inadequate medical system and issues associated with overcrowding. (*Id.* at pp. 6, 23-24). As a result, Hall has received inadequate care for his diabetes and infected toe.

### I. Diabetes

Hall has diabetes, which requires him to maintain a proper diet, receive accu-checks, and take insulin. (Doc. 1, p. 7). Medical staff informed him that the food he eats can affect his body and diabetes, and so, Hall requested to be seen by a dietitian or nutritionist. (*Id.* at p. 8). He was told by Nurse Lang that he was not going to be "seen by anyone like that because Wexford wasn't going to pay for that nor approve for him to go out and be seen." Hall also spoke with a nurse practitioner, Nurse Zimmer, about his diet. Hall informed Nurse Zimmer that he was being fed potatoes and bread at least two times a day. He explained that, as a diabetic, these types meals are not healthy because starch causes his body to produce excess sugar. Hall asked Nurse Zimmer if

he could be placed on a diet tray so that he could cut down on his starch intake and better monitor his diabetes. Nurse Zimmer denied his request and told Hall he would have to deal with "what the facility is feeding him." (*Id.*). He responded by asking "even if its bad for [my] health?" and she responded yes. (*Id.* at p. 9).

In addition to not receiving a diabetes appropriate diet, Hall has been denied accu-checks and insulin. As a diabetic, Hall asserts he must have his blood sugar monitored closely because his blood sugar levels affect his ability to heal from cuts and infections and affects his eyesight, heart, kidneys, liver, skin, nerves, feet, and brain. (Doc. 1, p. 13-14). Without his insulin, he could die or have a stroke, heart attack, seizure, or organ failure. (*Id.* at p. 10). Because of overcrowding at Menard and understaffing of medical provides by Wexford, Hall receives his insulin from between 2:00 a.m. and 4:00 a.m. (*Id.* at p. 14). At other IDOC facilities, medicine is passed out from 7:00 a.m. until 9:00 a.m. (*Id.*).

On several occasions, Hall would receive his accu-checks and insulin from Nurse Lang. (Doc. 1, p. 9). In one instance, when Nurse Lang came by his cell to do an accu-check, she woke Hall up from sleeping and told him "I don't like waiting on motherfuckers so don't make me wait on your ass again." (*Id.*). Hall asked her not to speak to him in this manner, and she left without giving him an accu-check or insulin. (*Id.*). Hall then yelled for the sergeant or lieutenant so that he could speak to someone about the situation. (*Id.* at p. 10). Lieutenant Qualls came to Hall's cell and told him to quit yelling or he would send Hall to segregation. Hall informed Lieutenant Qualls that he did not receive his insulin or accu-check. Lieutenant Qualls refused to go and have Nurse Lang return to provide the required treatment and threatened Hall again with segregation if he yelled again. (*Id.*).

Hall then wrote an emergency grievance about Nurse Lang and Lieutenant Qualls. (Doc. 1, p. 11). A few days later, Lieutenant Qualls told Hall that he better forget about the grievance and threatened him. Hall never received a response to the emergency grievance. (*Id.*).

Hall continued to have verbal confrontations with Nurse Lang. (Doc. 1, p. 12). Hall wrote several letters to the healthcare unit administrator, Angela Crain, about Nurse Lang's actions but nothing was done. He then wrote letters to Warden Lawrence about Nurse Lang and Angela Crain and informing Warden Lawrence that he was not receiving adequate medical care. Again, he did not receive a response. Nurse Lang denied giving Hall his accu-checks and insulin on at least five different occasions. (*Id.*).

Hall was also denied medical care for his diabetes due to a policy to cancel all medical care and treatment during lockdowns. (Doc. 1, p. 15).

**II. Infected Toe**

Hall continued to have problems with the healthcare unit and receiving medical care and treatment for his diabetes. (Doc. 1, p. 16). He wrote multiple sick call requests asking to be seen because his toenail "turned black and [fell] off." As a diabetic, Hall states that if this issue is not treated properly his toe or foot could become infected and require amputation. When he did not receive a response to his sick call requests, Hall asked Nurse Lang, on at least two different occasions, to place him in to be seen at sick call or by the doctor for his toe. (*Id.*). Nurse Lang refused because Hall had written a grievance complaining about her. (*Id.* at p. 16-17).

Hall then wrote Angela Crain about treatment for his toe and informing her that Nurse Lang had refused to see him or schedule him for a medical appointment. (Doc. 1, p. 17). He did not receive a response. (*Id.*). Hall then informed Lieutenant Qualls that his toe could be infected, he was not being scheduled for a medical appointment, and that Nurse Lang told him she would not do anything for him. (*Id.* at p. 18). Lieutenant Qualls responded by telling Hall he should not have filed grievances and then walked away. (*Id.*).

After writing another grievance, Hall was seen by a nurse, Jane Doe 1, at nurse sick call. (Doc. 1, p. 19). Although a nurse could not treat his serious condition, he was forced to be seen by a nurse at sick call first because of a Wexford policy implemented to delay medical care. Nurse

Jane Doe 1 told Hall that he did not have an infected toe and that she could not prescribe him anything stronger than Tylenol, Motrin, or ibuprofen for the pain. (*Id.*). He told Nurse Jane Doe 1 that he had already tried ibuprofen, and the pain medicine was not helping. (*Id.* at p. 19-20).

A week later, he was seen by Nurse Zimmer, a nurse practitioner, instead of a doctor. (Doc. 1, p. 20). Hall states that Menard only has two doctors to treat over 2,500 inmates, and that Wexford has hired nurse practitioners to save money even though nurse practitioners lack the medical expertise to diagnose certain conditions. Zimmer diagnosed Hall with a severe foot fungus and infection. (*Id.*). Nurse Zimmer told Hall that Nurse Jane Doe 1 had not only misdiagnosed him, but that she should not have diagnosed Hall in the first place because her job was to make an assessment. (*Id.* at p. 20-21). Nurse Zimmer ordered daily foot soaks in betadine and warm water for one month and prescribed an antibiotic. (*Id.* at p. 21).

When Hall would soak his foot, there was never any warm water. (Doc. 1, p. 21). The only water made available to him was ice cold. He informed Lieutenant Qualls and Nurse Lang that he needed warm water, and they told him to "man up," "deal with it," and "to stop complaining" because he was not getting any warm water. (*Id.*). Hall also told Nurse Lang and Nurse Zimmer that the ibuprofen was not stopping the pain in his toe and they told him to "suck it up" and "deal with this pain because it ain't nothing but a toenail." (*Id.* at p. 22). He was not given anything stronger for the pain. (*Id.*).

### III. Retaliation

Hall also asserts that Lieutenant Qualls and Nurse Lang retaliated against him for filing grievances. (Doc. 1, p. 24). After writing grievances regarding his serious medical needs, Lieutenant Qualls and Nurse Lang wrote a false disciplinary ticket against him stating that he had refused to have his temperature taken and refused to give up his I.D. (*Id.* at pp. 25-28). Hall was placed in temporary confinement status, given c-grade states, and restricted privileges. (*Id.* at p. 28). Hall wrote a grievance, and Nurse Lang threatened Hall again with segregation if he continued

to write grievances and "piss her off." (*Id.* at p. 29). He then wrote a letter to Lieutenant Qualls and Angela Crain requesting to no longer have contact with Nurse Lang. (*Id.*). Hall did not receive a response.

Sometime after Nurse Lang had threatened Hall with segregation, while performing an accu-check and giving Hall his insulin, Nurse Lang told hall "I told you about writing those grievances didn't I?" (Doc. 1, p. 30). She then squirted Hall in the face with a syringe full of insulin. (*Id.*). John Doe 2, the correctional officer who was escorting Nurse Lang, refused to write an incident report because he did not want to get involved. Hall then yelled for a sergeant or lieutenant. (*Id.*). Lieutenant Qualls came to his cell and said he would look into the incident. (*Id.* at p. 31). Hall was told by Lieutenant Qualls that Nurse Lang had been fired, but later when Hall was interviewed by Internal Affairs, he was told that she was not fired. (*Id.*).

PRELIMINARY DISMISSALS

In the Complaint, Hall alleges that Correctional Officer John Doe 2 did not write an incident report regarding Nurse Lang's conduct when she squirted Hall in the face with insulin. (Doc. 1, p. 30). He also asserts that after being assaulted by Nurse Lang, the Internal Affairs Unit did not fire her or bring her up on charges. (*Id.* at p. 31). John Doe 3, the head of the Internal Affairs Unit, and the Internal Affairs Unit ignored the situation and the fact that Nurse Lang had been "written up" in several lawsuits for violating inmates' rights. (*Id.*).

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (internal quotations and citations omitted). There are no allegations that John Doe 2, John Doe 3, and the Internal Affairs Unit participated in the retaliatory conduct of Nurse Lang, and claims of failure to investigate or write a report on Nurse Lang's actions are insufficient to establish their personal involvement in the retaliatory conduct. Therefore, the claims against John Doe 2, John Doe 3, and

the Internal Affairs Unit are dismissed without prejudice.

Hall also asserts that because of understaffing by Wexford his accu-checks and insulin are administered in the early morning hours. (Doc. 1, p. 14). Other than inconvenience, Hall has not alleged any serious harm or risk of harm that resulted from receiving medical treatment during this time of day. The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar,* 112 F. 3d 262, 267 (7th Cir. 1997). Accordingly, claims regarding receiving diabetes treatment between 2:00 a.m. and 4:00 a.m. are dismissed without prejudice.

### DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following Counts:

**Count 1:** Eighth Amendment claim for deliberate indifference to serious medical needs against Jeffreys, Lawrence, Willis, Siddiqui, and Wexford for canceling medical appointments at Menard resulting in the denial of medical care to Hall.

**Count 2:** Eighth Amendment claim for deliberate indifference to serious medical needs against Jeffreys for overcrowded conditions at Menard, which subjected Hall to unconstitutional conditions of confinement, including the denial of adequate medical treatment for his diabetes and infected toe.

**Count 3:** Eighth Amendment claim for deliberate indifference to serious medical needs against John Doe 1 and Jeffreys for allowing an inadequate medical system to exist at Menard.

**Count 4:** Eighth Amendment claim for deliberate indifference to serious medical needs against Nurse Lang, Nurse Zimmer, and Wexford for denying Hall adequate medical care for his diabetes by failing to provide him access to an appropriate diet.

**Count 5:** Eighth Amendment claim for deliberate indifference to serious medical needs against Nurse Lang, Lieutenant Qualls, Angela Crain, and Warden Lawrence for denying Hall adequate medical care for his diabetes by refusing to administer accu-checks and insulin on multiple occasions.

**Count 6:** Eighth Amendment claim for deliberate indifference to serious medical needs against Jane Doe 1, Nurse Lang, Angela Crain,

|  |  |
|---|---|
|  | Lieutenant Qualls, Nurse Zimmer, Wexford, and Siddiqui for denying Hall adequate medical care for his infected toe. |
| **Count 7:** | First Amendment claim against Nurse Lang and Lieutenant Qualls for retaliating against Hall for filing grievances. |
| **Count 8:** | Fourteenth Amendment due process claim against Nurse Lang and Lieutenant Qualls for filing a false disciplinary ticket against Hall. |
| **Count 9:** | Intentional infliction of emotional distress claim in violation of Illinois state law against Nurse Lang and Lieutenant Qualls. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[1]**

### Count 1

Hall claims that Dr. Siddiqui, Jeffreys, Lawrence, Willis, and Wexford have implemented a policy of canceling medical appointments during lockdowns. (Doc. 1, p. 15). Because of understaffing, appointments are also canceled due to overscheduling. (*Id.*). In general, medical care is canceled by Defendants "whenever they feel like it." (*Id.* at p. 16). These reoccurring cancellations have resulted in Hall "not receiving adequate medical care for his serious medical need and being deliberately denied medical care." (*Id.*).

Hall has not, however, provided any details regarding incidents when he was harmed because of the random cancellation of a medical appointment or because medical care was not provided during a lockdown at Menard. *See Ray v. Wexford Health Sources, Inc.,* 706 F. 864, 866 (7th Cir. 2013) ("if a given policy causes no harm to the plaintiff there is no possible relief"). For a claim to survive preliminary review, Hall must plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]bstract recitations of the elements of a cause of action or conclusory legal statements" are not sufficient. *Brooks v. Ross,* 578 F. 3d 574, 581 (7th Cir. 2009). As Hall only makes a conclusory allegation that he did not receive adequate medical care due to the cancellation policy, Count 1 is dismissed without prejudice.

### Count 2

It has long been held that prison overcrowding is not a *per se* constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). "Accordingly, an inmate's constitutional challenge to prison conditions requires a two-part examination." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). First, the plaintiff must establish that the prison was overcrowded, and that the overcrowding led to intolerable conditions, such as the deprivation of medical care, food, sanitation, or an increase in violence (objective component). *Id.; see also French v. Owens*, 777 F.2d 1250, 1253 (7th Cir. 1985). Additionally, the plaintiff must demonstrate that the defendant acted with deliberate indifference with respect to the conditions (subjective component). *Townsend,* 522 F.3d at 773 (quoting *Farmer v. Brennan*, 511 U.S. 832, 834 (1994)).

Hall's allegations fail to plead that Jeffreys acted with deliberate indifference regarding the overcrowded conditions, which resulted in Hall receiving inadequate medical care. Pursuant to Section 1983, "a government official is only liable for his or her own misconduct." *Perez v. Fenoglio,* 792 F. 3d 768, 781 (7th Cir. 2015). "Supervisors who are simply negligent in failing to detect and prevent subordinate misconduct are not personally involved." *Gossmeyer v. McDonald,* 128 F. 3d 481, 495 (7th Cir. 1997). Though, in some circumstances, a Section 1983 claim can be made against a supervisory official when an inmate demonstrates that the official was alerted to the issue and refused or declined to exercise his or her authority to address the issue. *Vance v. Peters,* 97 F. 3d 987, 993-94 (7th Cir. 1996).

Here, Hall claims that Jeffreys was put on notice that inmates were being provided inadequate medical care by previous lawsuits filed by other inmates, including *Rasho v. Baldwin*

and *Lippert v. Godinez,* and Jeffreys "was made aware that these issues still existed…but has turned a blind eye to his carceral burden as being responsible that all inmates, including plaintiff receive adequate medical care and treatment and safe housing." (Doc. 1, p. 5-6). These conclusory statements that Jeffreys was "made aware" that overcrowding at Menard continued to affect the provision of medical care and then "turned a blind eye" are not sufficient to plead that Jeffreys had actual knowledge of the conditions at Menard and then disregarded a substantial risk of harm to Hall. *See Perez,* 792 F. 3d at 782 (finding that "coherent and highly detailed grievances and other correspondences" established a plausible claim for deliberate indifference); *Turner v. Rednour,* 729 F. 3d 645, 652-53 (7th Cir. 2013) (finding deliberate indifference sufficiently pled where the plaintiff and other inmates had filed multiple grievances and prison officials had been placed on notice by previous lawsuits); *Gentry v. Duckworth,* 65 F. 3d 555, 561 (7th Cir. 1995) (finding deliberate indifferent pled when the plaintiff had sent "many letters," which were ignored). Additionally, Jeffreys cannot be held liable solely because of his position as the director because the doctrine of *respondeat superior* does not apply in Section 1983 actions. *E.g., Lennon v. City of Carmel*, *Ind*., 865 F.3d 503, 507–08 (7th Cir. 2017). Count 2 is therefore dismissed without prejudice.

**Count 3**

Hall alleges that John Doe 1 and Jeffreys have the authority and responsibility of making sure inmates have adequate access to medical care. (Doc. 1, p. 23). "[T]hey have been made aware that all inmates being housed in IDOC are being denied access to adequate medical [care] by the *Lippert v. Baldwin* class action lawsuit for denial of medical care…[but have] allowed an inadequate medical system to exist…and have turned a blind eye to these systemic deficiencies in the medical care." (*Id.* at p. 23-24).

As discussed above, these conclusory statements that individuals were aware of a problem and failed to act, without any factual support or content, is insufficient to state a claim. *Brooks*,

578 F.3d at 581 (7th Cir. 2009) (abstract recitations of the elements of a cause of action or conclusory legal statements are insufficient to state a claim); *Pepper,* 430 F.3d at 810 ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."); *Twombly*, 550 U.S. at 570 (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face."). Additionally, John Doe 1 and Jeffreys cannot be held liable based on their supervisory positions. Accordingly, Count 3 is dismissed without prejudice.

### Count 4

Count 4 will proceed against Nurse Lang, who refused to allow Hall to see a dietician or nutritionist, and Nurse Zimmer, who would not put Hall on the list to receive a diet meal tray. (Doc. 1, p. 8). *See Sellers v. Henman,* 41 F. 3d 1100, 1103 (7th Cir. 1994) (finding that prison officials could be found liable under the Eighth Amendment for deliberately withholding dietary accommodation that the inmate needs "to avoid a diabetic crisis").

Count 4 will also proceed against Wexford for maintaining a policy of not sending inmates to specialists or hiring a sufficient number of properly trained medical personnel, including specialists, in an effort to save money. (Doc. 1, p. 6-7, 8, 9, 14, 23). *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

### Count 5

Count 5 will proceed against Nurse Lang for refusing to administer accu-checks to Hall and provide him with insulin on multiple occasions (Doc. 1, pp. 9, 12) and Lieutenant Qualls for refusing to inform medical staff that Hall was in need of an accu-check and insulin (*Id.* at p. 10). *Bentz v. Ghosh,* 718 F. App'x 413, 419 (7th Cir. 2017) ("A prisoner states an Eighth Amendment claim against nonmedical prison officials if he alleges that they recklessly disregarded a substantial risk of serious pain to the prisoner." (citing *Gomez v. Randle,* 680 F.3d 859, 865-66 (7th Cir.

2012)). Count 5 will also proceed against the healthcare administrator, Angela Crain, and Warden Lawrence, who were informed that Hall was being denied adequate medical care for his diabetes by Nurse Lang and failed to intervene to rectify the situation. (Doc. 1, pp. 11, 12 ). *See Perez,* 792 F.3d at 781.

**Count 6**

Count 6 will proceed against Nurse Lang for refusing to place Hall on the list to be seen in sick call for his infected toe, refusing to provide Hall with warm water to soak his foot, as prescribed, and failure to treat his corresponding pain. (Doc. 1, pp. 16-18, 21, 22). Count 6 will also proceed against Lieutenant Qualls for refusing to place Hall on the list to be seen in sick call for his infected toe and for refusing to provide Hall with warm water to soak his foot, as prescribed. Count 6 will proceed against Angela Crain for failing to place Hall on the list to be seen in sick call for his infected toe (*Id.* at p.17), and Jane Doe 1 for misdiagnosing his toe condition and failing to treat his pain. (*Id.* at p. 19-21). Count 6 will proceed against Nurse Zimmer for failing to treat Hall's pain. (*Id.* at p. 22). Count 6 will also proceed against Dr. Siddiqui, the medical director at Menard, for enforcing a policy of giving inmates, including Hall, only over the counter pain medication, regardless of effectiveness. (*Id.* at p. 23). Hall claims that he was given over the counter pain medicine by Dr. Siddiqui, even after informing him the medicine was ineffective.

Finally, Count 6 will proceed against Wexford. Hall alleges that he received inadequate treatment for his toe infection because of the following cost saving policies implemented by Wexford: (1) requiring inmates to first see a nurse at sick call, who is not trained to treat inmates, prior to seeing a doctor; (2) not hiring a sufficient number of properly trained medical personnel; and (3) treating all inmate complaints of pain with ibuprofen, Motrin, or generic Tylenol and denying inmates access to adequate pain medications. (Doc. 1, p. 19, 20, 22, 23).

**Count 7**

Hall alleges that Nurse Lang and Lieutenant Qualls refused to put him in for sick call,

threatened him, and wrote a false disciplinary ticket against him for filing grievances. (Doc. 1, p. 11, 16, 18, 25). These allegations are sufficient for Count 7 to proceed. *See Antoine v. Ramos,* 497 F. App'x 631, 635 (7th Cir. 2012) ("Grieving about prison conditions is protected First Amendment activity." (citing *Gomez,* 680 F. 3d at 866)).

## Count 8

A disciplinary ticket, even if falsely issued, will not violate the Fourteenth Amendment if the inmate receives procedural due process in the disposition of the ticket. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984); *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), *aff'd*, 70 F.3d 117 (7th Cir. 1995).

Here, the Complaint does not contain any allegations or factual details regarding a disciplinary proceeding following the issuance of the ticket. Additionally, Hall has not asserted that he was denied a constitutionally protected interest or experienced an "atypical and significant hardship" that required due process safeguards because of the disciplinary ticket. *See Hardaway v. Meyerhoff,* 734 F. 3d 740, 743 (7th Cir. 2013) (quoting *Sandin v. Conner,* 515 U.S. 472, 478 (1995)); *See Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (collecting cases) (there is no protected liberty interest implicated in demotion to C-grade status or loss of certain privileges); *Woody v. Zatecky*, 594 F. App'x 311, 312 (7th Cir. 2015) ("courts have held that a loss of visitation privileges—including contact visits—is not an atypical and significant hardship.") (citations omitted). Therefore, Count 8 will be dismissed without prejudice.

## Count 9[2]

Under Illinois law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their

---

[2] The state law claim in Count 6 concerns the same facts of the Section 1983 claims, so supplemental jurisdiction is appropriate. *See* 28 U.S.C. § 1367(a); *Wisc. v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008); *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008).

conduct would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Vill. Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017). S*ee also Bailey v. City of Chic.*, 779 F.3d 689, 696–97 (7th Cir. 2015); *Schiller v. Mitchell*, 828 N.E.2d 323, 333 (Ill. App. Ct. 2005) (citing *Pavlik v. Kornhaber*, 761 N.E.2d 175 (Ill. 2001)).

Liberally construing the facts presented by Hall, his allegations are sufficient to proceed on a claim for intentional infliction of emotional distress against Nurse Lang and Lieutenant Hall, and Count 9 survives preliminary review.

### OFFICIAL CAPACITY CLAIMS AND UNKNOWN DEFENDANT

Hall brings his claims against Defendants in their individual and official capacities. (Doc. 1, p. 33). State officials named in their official capacities may not be sued for monetary damages in federal court, and the most appropriate government official responsible for ensuring that injunctive relief is carried out is the acting warden. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, the official capacity claims are dismissed, and Anthony Willis, the Warden of Menard, will remain as a defendant in his official capacity only for the purpose of implementing any injunctive relief that maybe ordered and responding to discovery aimed at identifying the unknown defendant. Once Defendants have entered an appearance, the Court will provide further instructions and deadlines for identifying the remaining Jane Doe.

### MOTION FOR APPOINTMENT OF COUNSEL

Hall has filed a motion requesting the Court to recruit counsel on his behalf. (Doc. 3). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

In an attempt to recruit counsel on his own, Hall states that he has written over ten law firms and lawyers requesting representation and has not yet heard any responses. (Doc. 3, p. 4). He provides a lists of law firms and lawyers he has attempted to contact and cites to Exhibits A, B, C, D, and E. There are no exhibits attached to the motion, and the Motion for Appointment of Counsel is five pages, as indicated on the Electronic Filing Cover Sheet. (*Id.*; Doc. 1, p. 34). At this point, it is not clear if Hall intended to attach supporting exhibits, and a list of law firms and lawyers does not provide the Court with enough information to determine if Hall has made a reasonable effort of obtaining counsel on his own. Because he has failed to meet his threshold burden of making a "reasonable attempt" to secure counsel, the Court denies the Motion for Appointment of Counsel. Should Hall choose to move for recruitment of counsel at a later date, the Court directs him to: (1) include in the motion the names and address of at least three attorneys he has contacted; and (2) if available, supporting documentation, such as the letters from the attorneys who declined representation or the authorization of payment form used to send the letters.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 4** shall proceed against Lang, Zimmer, and Wexford, **COUNT 5** shall proceed against Lang, Qualls, Crain, and Lawrence, **COUNT 6** shall proceed against Jane Doe 1, Lang, Crain, Qualls, Zimmer, Wexford, and Siddiqui, **COUNT 7** shall proceed against Lang and Qualls, and **COUNT 9** shall proceed against Lang and Qualls. **COUNTS 1, 2, 3,** and **8** are **DISMISSED without prejudice**. Because there are no surviving claims against them, Defendants Jeffreys, John Doe 1, John Doe 2, John Doe 3, and the Internal Affairs Unit are **DISMISSED from this action without prejudice.** The Clerk of Court is **DIRECTED** to terminate them as defendants. Defendant Willis shall remain a defendant in his official capacity only for the purposes of implementing any injunctive relief that may be ordered and responding to discovery aimed at identifying the Jane Doe.

The Motion for Appointment of Counsel (Doc. 3) is **DENIED without prejudice**. In light of this Order, the Motion for Status (Doc. 15) is **DENIED as moot.**

The Clerk of Court shall prepare for **Wexford, Lawrence, Siddiqui, Crain, Zimmer, Lang, Qualls, Willis** (official capacity only), and **Jane Doe 1** (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment as identified by Hall. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Hall, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Hall, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Hall is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

   **IT IS SO ORDERED.**

   **DATED:** **March 11, 2021**

                    *s/Stephen P. McGlynn*
                    **STEPHEN P. MCGLYNN**
                    **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Hall is advised to wait until counsel has appeared for the defendants before filing any motions and to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Hall need not submit any evidence to the Court at this time, unless otherwise directed by the Court.