IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE HALL, #S13136,<br><br>            Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>FRANK LAWRENCE,<br>ANTHONY WILLLIS,<br>MOHAMMED SIDDIQUI,<br>ANGELA CRAIN,<br>MARY JO ZIMMER,<br>AMY LANG, and<br>WILLIAM QUALLS,<br><br>            Defendants. | Case No. 20-cv-00556-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

      This matter is before the Court on motions for summary judgment filed by all Defendants. (Doc. 40, 49). Defendants argue that Plaintiff Willie Hall has failed to exhaust his administrative remedies prior to filing this lawsuit. Hall filed a response in opposition to the motion. (Doc. 54). The Court scheduled a hearing on the motions for February 16, 2022. (Doc. 55).

      Prior to the hearing, Hall filed a motion requesting a copy of his response because it was written and filed by another inmate before he was able to see it. (Doc. 61). He claimed that the response was drafted and mailed to the Court by another inmate who is helping him litigate this case before he had a chance to review it. Hall stated that he needed a copy in order to prepare for the hearing. Because it appeared that Hall had not signed and filed the response himself, the Court sent a copy of the response for him to sign and refile in accordance with Federal Rule of Civil Procedure 11. (Doc. 62). The Court directed Defense Counsel to coordinate with the litigation coordinator at Menard Correctional Center to ensure Hall had copies of the Complaint, motions

for summary judgment, and his response prior to the hearing. The hearing was held on February 16, 2022, as scheduled. (Doc. 64).

On March 4, 2022, Hall filed a motion to file a late response. (Doc. 67). The motion is **GRANTED.** The response contains identical arguments presented by Hall in the original response (*see* Doc. 61) and is properly signed, as directed by the Court.

Based on the briefs filed by the parties and the testimony from the hearing, the Court will **GRANT** both motions for summary judgment.

### BACKGROUND

Hall, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Menard Correctional Center, commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 for the deprivation of his constitutional rights. (Doc**.** 1). Hall is diabetic and alleges that he has been denied adequate treatment for his diabetes, including the denial of a proper diet, accu-checks, and insulin. He also claims that did not receive treatment for his toe after his toenail "turned black and [fell] off" and became infected. He is proceeding on the following claims:

| | |
|---|---|
| **Count 4:** | Eighth Amendment claim for deliberate indifference to serious medical needs against Nurse Lang, Nurse Zimmer, and Wexford for denying Hall adequate medical care for his diabetes by failing to provide him access to an appropriate diet. |
| **Count 5:** | Eighth Amendment claim for deliberate indifference to serious medical needs against Nurse Lang, Lieutenant Qualls, Angela Crain, and Warden Lawrence for denying Hall adequate medical care for his diabetes by refusing to administer accu-checks and insulin on multiple occasions. |
| **Count 6:** | Eighth Amendment claim for deliberate indifference to serious medical needs against Nurse Lang, Angela Crain, Lieutenant Qualls, Nurse Zimmer, Wexford, and Siddiqui for denying Hall adequate medical care for his infected toes. |
| **Count 7:** | First Amendment claim against Nurse Lang and Lieutenant Qualls for retaliating against Hall for filing grievances. |

In the motions, Defendants argue that Hall failed to exhaust his administrative remedies

prior to filing this lawsuit as is required by Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Doc. 41, 50). They identify three relevant grievances that were recorded in the Cumulative Counseling Summary and filed as exhibits by Hall along with his Complaint: emergency grievance #272-12-19, emergency grievance #297-1-20, and emergency grievance #345-1-20. (Doc. 41, 50). Emergency grievance #272-12-19 was deemed an emergency by the warden and then determined moot by the grievance officer. The warden concurred in this determination, and the grievance was returned to Hall. Defendants argue, however, that there is no record that Hall then took the next step of appealing the grievance to the Administrative Review Board. Thus, he did not complete the grievance process by timely filing an appeal.

As for emergency grievance #297-1-20 and emergency grievance #345-1-20, these grievances were determined not to be emergencies by the warden and returned to Hall with the direction to resubmit the grievance according to normal grievance procedures. Defendants argue there is no record that Hall took this step and refiled the grievances. Again, because Hall failed to follow the grievance procedures when filing these grievances, he has not exhausted his claims.

Defendants also identify a fourth relevant grievance included by Hall with his Complaint, dated April 23, 2020. This grievance does not appear on the grievance logs and has no grievance number or any response from a counselor, grievance officer, or warden. Accordingly, Defendants argue that this grievance was also not properly submitted according to procedures.

Defendants point out that none of these grievances address Hall's claims in Count 4 regarding the failure of Nurse Lang, Nurse Zimmer, and Wexford to provide him with an appropriate diet for his diabetic condition. Hall, therefore, has failed to exhaust Count 4.

In his response, Hall argues that he complied with the grievance procedures of the Illinois Administrative Code, but he was prevented from exhausting by prison staff, namely Lieutenant Qualls. (Doc. 54, 67). He claims that he filed an emergency grievance in which he complained that

Nurse Lang, who was trained by Wexford, had denied him insulin. The grievance also stated that when he reported the issue to Lieutenant Qualls, then Lang and Qualls threatened to send him to segregation. Hall asserts he put the grievance in an envelope and addressed it to the warden. After a few days, Qualls told Hall that he did not appreciate Hall writing grievances on him and that Hall should forget the grievance or Hall would regret it. Hall argues that this conversation with Qualls demonstrates that Qualls had intercepted the grievance and destroyed it.

Hall argues he wrote more grievances about the denial of medical care and that policies were being implemented to deny care and understaff the healthcare unit in order to save money. He asserts these grievances were either intercepted, stolen, or destroyed by Qualls, Lang, or other staff. Because of this interference by staff, the grievance process was rendered unavailable to him.

Finally, Hall contends he submitted another grievance, and after submitting the grievance, he was then seen by a nurse.[1] Because the issue in the grievance was resolved and he received a medical appointment, Hall argues that he no longer needed to appeal the grievance.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). On summary judgment, the district court's role is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on the issue of exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey v. Conley*, 544 F.3d at 739-41. The Seventh Circuit in *Pavey* held

---

[1] Hall appears to be referencing Emergency Grievance #272-12-19. (*See* Doc. 1, p. 39).

that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge, not a jury. *Pavey*, 544 at 740-41. A summary judgment motion on exhaustion grounds typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Id*. at 742.

## II. Exhaustion of Administrative Remedies

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

*III. Grievance Procedures*

The grievance procedure for IDOC inmates is laid out in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. If the inmate's grievance does not involve an emergency, the inmate must first file a grievance with the counselor within 60 days of the discovery of an incident. *Id.* at § 504.810(a). The grievance form must contain factual details regarding what happened, when, where, and the name of each person who involved in the complaint. *Id.* at 504.810(c). While this provision does not preclude an offender from filing a grievance when the names of individuals are not known, he or she must include as much descriptive information about the person as possible. *Id.*

Grievances that are unable to be resolved through the counselor are then sent to the grievance officer. *Id.* at § 504.820(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The chief administrative officer ("CAO") then reviews the findings and recommendation of the grievance officer and advises the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the response from the CAO, he can file an appeal the decision to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The appeal must be received by the ARB within 30 days after the date of the CAO's decision. *Id.* The ARB then must submit to the Director a written report of its findings and recommendations. *Id.* at § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id*. at § 504.850(e).

An inmate may request that a grievance be handled as an emergency by forwarding it

directly to the CAO. *Id.* at § 504.840. If it is determined that there a substantial risk of imminent personal injury or other serious or irreparable harm exists, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* On the other hand, if the CAO determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

## ANALYSIS

For the following reasons, the Court finds that Hall has failed to exhaust his administrative remedies as required by the PLRA.

### *Emergency Grievance #272-12-19*

Hall filed emergency grievance #272-12-19 on December 29, 2019. (Doc. 1, p. 39). In the grievance, Hall asks for medical care for his toes. He states that he has been putting in sick call slips for two weeks about his toes hurting, which are turning black and bleeding. His toenail on his right big toe has come off and the nail of the left big toe looks as if it is about to come off. After submitting the grievance, the warden determined the issue was an emergency, and the grievance was addressed by the grievance officer. On January 14, 2020, the grievance officer determined the issues presented in the grievance were moot because Hall had medical appointments for his toes on January 1 and 8, 2020. (Doc. 1, p. 37). The warden concurred. Hall did not file an appeal with the ARB. He argues that he was not required to appeal because he received the relief requested. (Doc. 67, p. 15).

Hall is correct that an inmate does not have to appeal favorable decisions. *See Thornton v. Snyder*, 428 F. 3d 690, 696-97 (7th Cir. 2005). However, emergency grievance #272-12-19 still does not properly grieve Count 6, his claims regarding medical care for the issues with his toes.

Count 6 has several parts: (1) Nurse Lang, Lieutenant Qualls, and Angela Crain failed to

put Hall on the sick call list to be seen for his toenail issues; (2) Nurse Lang and Lieutenant Qualls refused to provide Hall with warm water to soak his foot as prescribed; (3) Nurse Zimmer failed to treat Hall's pain; (4) Dr. Siddiqui enforced a policy of giving inmates over the counter pain medication regardless of effectiveness; and (5) Wexford implemented cost saving policies, resulting in inadequate treatment of his toes.

The conduct alleged in parts 2-5 of Count 6 occurred *after* Hall filed the grievance on December 29, 2020, and had medical appointments on January 1 and 8, 2020. Accordingly, this grievance could not have served to alert prison officials that Hall was unhappy with the medical care being provided for his toe infections.

As for part 1 of Count 6, the Court finds that emergency grievance #272-12-19 does not comply with Illinois grievance procedures and contain sufficient information to alert the prison of misconduct by Defendants Lang, Qualls, and Crain. In the Complaint, Hall alleges that after his sick call slips went unanswered, he spoke with Nurse Lang and Lieutenant Qualls and requested to see a medical provider, but they refused to help him schedule an appointment because he had previously written grievances against them. (Doc. 1, 16-18). He also wrote to Angela Crain and did not receive a response. In the grievance, Hall complains that he has "been putting in sick call slips for 2 weeks about my toes hurting" and seeks "medical care ASAP." (Doc. 1, p. 39). While Hall grieves the issue of failing to receive timely medical treatment for his toes after putting in sick call requests, he does not sufficiently describe Defendants, their conduct, or their involvement in denying him care.

The Illinois Administrative Code instructs that a grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). These instructions are also included on the grievance form used by

Hall. As discussed above, Hall is not required to specifically name the Defendants, but he must comply with the Illinois grievance process and grieve the issues with sufficient particularity. *See Santiago v. Anderson*, 496 F. App'x 630, 637 (7th Cir. 2012) ("Since May 2003 the grievance procedures applicable to Illinois prisons have included a particularity requirement[.]"). The Court finds that Hall failed to meet this requirement in emergency grievance #27-12-19. He simply states his sick call slips had gone unanswered; a drastically different complaint than the allegation that certain staff members were intentionally and actively refusing to schedule him to see a medical provider, after submitting the sick call slips.

Thus, emergency grievance #272-12-19 failed to exhaust his claims regarding treatment for his toes (Count 6).

***Emergency Grievances #297-1-20 and #345-1-20***

Next, Hall filed two more emergency grievances regarding inadequate medical care for his toes. One grievance is dated January 21, 2020, emergency grievance #297-1-20, and the other is dated January 22, 2020, emergency grievance #345-1-20. (Doc. 1, p. 40-42). The warden determined that both grievances were not emergencies and the grievances were returned to Hall with instructions to resubmit the grievances through the normal grievance process. At the hearing, Hall testified that he did not refile either grievance.

As Hall did not follow the grievance process and refile the grievances "under the normal procedure and complete the full three-stage process," these two grievances cannot serve to exhaust any of his claims in this case. *Williams v. Wexford Health Sources, Inc.*, 957 F. 3d 828, 832 (7th Cir. 2020).

***Emergency Grievance Dated April 23, 2020 and Other Unanswered Grievances***

Hall has provided the copy of a fourth emergency grievance dated April 23, 2020. (Doc. 1, p. 44-45). In the grievance, Hall grieves that Nurse Lang came to his cell to do an accu-check for

his diabetes. Hall told Lang that he did not feel comfortable with her administering his accu-check. He asked her for another nurse, and if another nurse was not available, then he refused treatment. Lang responded, "that's bull shit," and squirted Hall in the face and eyes with insulin. Hall then spoke with Lieutenant Qualls and other officers and told them what happened. He requested to see a medical professional for his eyes because they were burning and he still needed an accu-check. Lang then had Qualls write Hall a disciplinary ticket "for not getting up fast enough when she came to the door for temperature checks." Hall further grieves that Lang retaliated against him and denied him medical care for his diabetes and toe issues. Wexford, Menard, and IDOC have been made aware of Lang's actions against Hall and other inmates but have not done anything. In the grievance, Hall asks for Nurse Lang to be disciplined.

This grievance does not have a grievance number or a response from a counselor, grievance officer, the warden, or the ARB. There is also no record of this grievance in the cumulative Counseling Summary. (*See* Doc. 50-1). Hall testified that he submitted this emergency grievance through regular mail, but it was never returned to him, and he did not receive a response. Hall stated that he copied the April 23 grievance before filing it because he was warned by another inmate that Menard tends to lose grievances or not respond to them, and he would need copies of the grievances he submitted for when he filed a lawsuit. He asserted at the hearing that he believes Qualls destroyed this grievance. Hall further testified that he filed other grievances about Qualls, Lang, and Crain, but those grievances went unanswered as well. (*See also* Doc. 67, p. 10, 17).

Based on the record and the testimony presented at the hearing, the Court does not find that Hall was prevented from exhausting his administrative remedies as to the unanswered grievances, including the grievance dated April 23. Hall's testimony was inconsistent and not supported by the record. He could not provide any details on the unanswered grievances, including the number of grievances filed or the dates or time frame in which they were filed. Additionally, there is no

record that he followed up with his counselor regarding any of these unanswered grievances. At the hearing, Hall was specifically asked if he inquired about the status of the April 23 grievance with his counselor, and he responded no. Hall testified that it is difficult to communicate with his counselor, but the Cumulative Counseling Summary documents face to face interactions between Hall and different counselors in April, May, and June of 2020. (Doc. 50-1, p. 3). Hall testified that in May he wrote his counselor a message about a trust fund issue and received a response. (*See* Doc. 50-1, p. 3). But at no time did he ask his counselor about the missing grievances. *See Salley v. Parker,* No. 18-cv-5700, 2020 WL 4736412, at *9 (N.D. Ill. Aug. 14, 2020) ("a prisoner may not simply sit on his hands and abandon the grievance process when he receives no response" (citing *Hill v. Bond,* No. 13 CV 7304, 2015 WL 1166053, at *3 (N.D. Ill. 2015))). Hall could also not explain why he copied the April 23 emergency grievance, but not any of the other missing grievances he allegedly filed after April 23.

      Hall's speculation that Qualls destroyed the April 23 grievance and others and that his other grievances were lost, stolen, or destroyed also lacks corroborating evidence. Hall testified that during the same period of time he submitted emergency grievance #272-12-19, emergency grievance #297-1-20, and emergency grievance #345-1-20 regarding medical treatment for his toes, he was also filing grievances about his lack of an appropriate diabetic diet. According to the Complaint, also during this time, grievances were going missing and Qualls was making threats. (Doc. 1, p. 12, 17 - 20). Yet, for some unexplained reason, these three emergency grievances were not destroyed and were recorded in the Cumulative Counseling Summary. (Doc. 50-1, p. 4). More significantly, in direct contradiction to allegations put forth in the Complaint, Hall testified that from December 29, 2020 through January 22, 2020, when the three recorded emergency grievances were filed and he was filing grievances about his diabetic diet, he was not prevented by staff from filing grievances about his medical care.

Accordingly, the Court does not find Hall's assertions that the emergency grievance dated April 23 and others went missing, were destroyed, or stolen to be credible. Accordingly, none of these grievances serve to exhaust his administrative remedies as to the claims in this case.

### DISPOSITION

For the reasons stated above, the Motion to File Late Response (Doc. 67) filed by Plaintiff Hall is **GRANTED.**

The Motion for Summary Judgment (Doc. 40) filed by Defendants Siddiqui, Wexford Health Sources, Inc., and Zimmer is **GRANTED.** The Motion for Summary Judgment (Doc. 49) filed by Defendants Crain, Lang, Lawrence, Qualls, and Willis is **GRANTED.**

This case is **DISMISSED without prejudice** for failure to exhaust. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

IT IS SO ORDERED.

DATED: March 11, 2022

                                                         *s/Stephen P. McGlynn*
                                                         **STEPHEN P. MCGLYNN**
                                                         **United States District Judge**